Case No. 16-35693

(Consolidated with Case No. 16-35663)

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

L. J. GIBSON, et al.

Plaintiffs-Appellants,

v.

CREDIT SUISSE AG, et al.

Defendants-Appellees.

_____

Appeal from the United States District Court for the District of Idaho

The Honorable Justin L. Quackenbush

D.C. No. 1:10-cv-00001-JLQ

_____

**APPELLANTS' OPENING BRIEF**

_____

Robert C. Huntley, ISB #894          James C. Sabalos, TX #17499100

The HUNTLEY LAW FIRM PLLC          Law Office of James C. Sabalos

815 Washington Street              1400 Bristol Street North, Suite 210

Boise, ID 83701                    Newport, CA 92660

Phone: 208.388.1230                Phone: 949.355.6084

Fax: 208.388.0234                  Email: jimsabalos@hotmail.com

Email: rhuntley@huntleylaw.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellant Procedure 26.1, Plaintiffs/Appellants certify that they are not owned by a parent corporation nor are they a publicly held corporation.

*/s/ Robert C. Huntley*
Robert C. Huntley

# **TABLE OF CONTENTS**

I.  Statement of Jurisdiction …………………………………………….  1

II.  Statement of Issues Presented for Review …………………………...  2

III.  Statement of the Case ………………………………………………..  2

IV.  Summary of Argument………………………………….....................  8

V.  Standard of Review ……………………………………………….…  11

VI.  Argument………………………………………………………………..  11

    Argument Section 1.  There was no violation of Rule 3.3 or 8.4 ……….  11

    Argument Section 2: The trial court's award of $57,738 in attorney fees against appellant attorneys is in clear violation of Ninth Circuit rulings that fees NOT be imposed against attorneys for defending against sanctions………………………………………………………………  26

        A. Attorney's Fees Incurred In Preparing A Motion For Sanctions Under §1927 Or The Court's Inherent Powers Is Contrary To Law…………………………  27

        B. The Magistrate's Award of Attorney's Fees For Replies, Opposing Reconsideration And Appealing To The District Court Are Also Separately Contrary To Law…………………  31

        C. The Magistrate's Statement That The Motions For Sanctions Were The "Excess Costs" Awardable Pursuant to § 1927 Is Separately Contrary To Law…………………………………  32

    Argument Section 3:  Idaho Rule of Professional Conduct 8.4(d) was not violated …………………………………………………..  34

Argument Section 4: Neither the Magistrate Judge nor the District Judge Provided Appellant Counsel with the Notice or Process Required Before Imposition of Sanctions……………………………..    34

VII.    Statement of Related Cases ………………………………………….   35

VIII.   Conclusion and Relief Sought ………………………………………   35

# TABLE OF AUTHORITIES

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406-07,
110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)..…………………………27, 28, 31, 32

*Garcia v. Bana*, 2012 WL 2119157, *9 (N.D. Cal. 2012) ……………………. 30

*In re Girardi*, 611 F.3d 1027, 1067 (9th Cir. 2010) …………………………… 28

*Haynes v. City & County of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012)..33

*Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir. 1992) ……………………..27, 31, 33

*Margolis v. Ryan*, 140 F.3d 850, 854-55 (9th Cir. 1998) ……………………… 31

*Montoya v. Orange Cnty.*, 2013 WL 6705992, *15 (C.D. Cal. 2013) ………….29

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
  2012 WL 5372477, *7 (N.D. Cal. 2012) ……………………………………….. 30

*Parker v. Upsher-Smith Labs., Inc.*, 2009 WL 418596, *9 (D. Nev. 2009) …... 30

*In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 466
 (9th Cir. 2010)……………………………………………………… 27, 28, 29, 30, 32

*In re SPECS*, 2012 WL 5372583, *2 (N.D. Cal. 2012) ………………………… 30

## I.     STATEMENT OF JURISDICTION

Diversity jurisdiction was originally conferred in the District Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). Jurisdiction originally conferred under CAFA when the Complaint was filed remains, notwithstanding the denial of class certification.

Additionally, the District Court originally had diversity jurisdiction under 28 U.S.C. § 1332(a) when the original Complaint was filed.

The District Court also had personal jurisdiction over all defendant parties pursuant to the long-arm statute of the State of Idaho, codified at I.C. § 5-514, et seq., which subjects them to judicial process in Idaho as a result of their conduct of business activities within its territory and/or the commission of tortious acts having a direct impact or effect thereon.

Jurisdiction lies in the Ninth Circuit due to timely Notice of Appeal **ER 103** under F.R.A.P. Rule 4 on August 23, 2016 of the Judgment of the District Court which was entered on August 2, 2016 **ER 112**.  This was a final order of summary judgment which disposed of all claims.

The sanctions-specific Orders now being appealed from predated the August 2, 2016 Summary Judgment, but this appeal is timely because the trial court denied Appellants' request for interlocutory appeal, ruling that the sanctions appeals must await final judgment.

## II.   ISSUES PRESENTED FOR REVIEW

1) It was error to impose sanctions upon Appellant attorneys Robert Huntley and James Sabalos (and three of their co-counsel) under Rule 3.3 of the Idaho Rules of Professional Conduct.

2) It was error to impose sanctions upon Appellant attorneys Robert Huntley and James Sabalos (and three of their co-counsel) under Rule 8.4(d) of the Idaho Rules of Professional Conduct.

3) The award of attorney fees to Credit Suisse and Cushman & Wakefield was in violation of the rulings of this Court (and others) which hold that such fees are NOT awardable against an attorney for reasonably defending against the imposition of sanctions, fees being awardable only if sanctionable conduct itself delayed or multiplied the proceedings. Appellants conduct neither delayed no multiplied the proceedings.

5) Neither the Magistrate Judge nor the District Judge Provided Appellant Counsel with the Notice or Due Process Required Before Imposition of Sanctions.

## III.   STATEMENT OF THE CASE

The case-in-chief was initiated on January 3, 2010 on behalf of approximately 2,284 putative class members who purchased real property interests and memberships in four Master Planned Communities, that is, Lake Las Vegas in

Nevada, Yellowstone Club in Montana, Tamarack in Idaho, and Ginn sur Mer in the Bahamas. The ECF filings now total 844, few of which have relevance to the sanctions issues.[1]

Fifteen months into the case, during which time no discovery had been permitted, a former lead appraiser for Cushman & Wakefield, Mike Miller, MAI, came forward. While employed with Cushman in 2003-4 He had appraised LLV using standard "as is, current market value" appraisal methodologies, arriving at a market value of $570 Million.

Credit Suisse solicited the LLV developers to take out a non-recourse loan package which provided a loan of an additional $550 Million thru use of a new appraisal method, unrecognized by the American Appraisal Institute, which Credit Suisse developed and named "Total Net Value" (TNV) which inflated the appraised value to $1.1 Billion, approximately two times its true value. The inflated value was achieved thru several improper machinations including failure to discount to present cash value.

Credit Suisse, through top Cushman managers, that Miller not make the new TNV appraisal and that his successor not be provided his data or working papers.

The case boils down to the following sequence of ten (10) events, not one of which constitutes any degree misconduct, sanctionable or otherwise.[2]

---

[1] This paragraph, and the next four paragraphs, are provided as foundation for understanding the events relevant to this sanctions appeal.

**Event No. 1:** MAI Appraiser Michael Miller (a former employee of Cushman who was gravely concerned about the legality of the Total Net Value appraisal scheme and, its "potential liability" to CW and CS), came forward and was interviewed in Denver on March 19, 2011. His exact words were incorporated into an affidavit as he spoke. Two Plaintiffs' attorneys were present in person and two others were conferenced in via telephone. Miller dictated while attorney Conant typed. In certain paragraphs, Miller even took over the typing. Miller re-read and approved every word before leaving for the airport.

**Event No. 2:** Miller did not sign the affidavit at the end of the meeting in Denver, wishing to first consult counsel about potential liability under the confidentiality provisions of his employment contract with Cushman and view emails from his personal computer (which was in the possession of his then former employer, the Defendant Cushman and Wakefield).

**Event No. 3:** Plaintiffs were under an April 21, 2011 deadline to file a Third Amended Complaint to plead facts more specifically. At that point, fifteen months into the case, no discovery had been permitted. Therefore Plaintiffs immediately filed the unsigned affidavit (as an attachment to an affidavit of counsel) with the Court, with service on counsel, in support of a Motion for leave

---

[2] More comprehensive citations to the ER supporting these ten events are provided below in the Argument (Part V). A single "Joint Excerpts of Record" is filed for the consolidated appeals.

to depose Miller to preserve his testimony, because Miller was unwilling to sign for fear of suit against him by Cushman. Upon advice of his attorney, he was willing to be **deposed under oath** to protect him from being charged with violation of restrictions in his employment contract.

**Event No. 4:** The Defendants opposed the Plaintiffs' Motion to take Miller's deposition, which motion Magistrate Judge Bush denied on April 4, 2011. In denying Plaintiffs' request, Magistrate Bush stated:

> **The Court does have concern, however, that even the most narrowly-defined discovery boundaries, particularly in a case like this, could very well blossom into a morass of tangled factual and legal arguments that raise more questions than answers. .** . Even after U.S. District Judge Edward J. Lodge's March 31, 2011 Order on Report and Recommendation (Docket No. 126), these concerns remain . . . ." **ER 1173** (ECF 128, p. 2) (emphasis added).

**Event No. 5:** Plaintiffs' attorneys incorporated some of Miller's testimony into the Third Amended Complaint. The court-imposed deadline for filing the TAC arose BEFORE Miller later provided a signed, slightly modified, version of the affidavit.

**Event No. 6:** Miller made minor revisions to his unsigned affidavit, and his attorney advised that he did not want that affidavit used or published. Plaintiffs' counsel was directed by Miller's attorney not to use or publish the newly signed affidavit. Miller remained willing to have his deposition taken.

Magistrate Judge Bush later lifted the stay of discovery for limited purposes and allowed Miller's deposition to be taken on May 31, 2012. The signed affidavit was provided to defense counsel by one of Miller's attorneys 34 days before the deposition.[3]

**Event No. 7:** Oral argument before Judge Bush on pending Motions to Dismiss and Plaintiffs' Motion For Partial Summary Judgment was conducted, wherein two of plaintiff's counsel referenced paragraphs in the Third Amended Complaint. Not once did they reference the Miller Affidavit.

**Event No. 8:** A brief was filed by plaintiffs, "Plaintiffs' Opposition to Credit Suisse Motion to Dismiss," ECF No. 152 **ER 987**, which referenced **only** the Third Amended Complaint. The clear text of that document contradicts and disproves the representations by the Court and Counsel that references were made to the unsigned affidavit.

**Event No. 9:** Plaintiffs' filed Memorandum in Opposition to Cushman Motion to Dismiss Third Amended Complaint ECF No. 153, which is the second document about which the trial court and counsel have incorrectly asserted that reference was made to the unsigned affidavit. **ER 957**.

---

[3] When Miller's deposition was finally permitted on May 31, 2012, he affirmed the truth of the statements in the unsigned affidavit, testifying the edits to the unsigned affidavit were to protect him from suit by his former employer.

**Event No. 10:** Credit Suisse requested terminating sanctions **ER 405**. Cushman requested terminating sanctions **ER 428**, which terminating sanctions the District Court denied, but did refer the issue of whether other sanctions should be imposed to Magistrate Bush.

Based upon the above-listed ten events, the Magistrate Judge entered an Order imposing $30,000 in sanctions against five attorneys, making each attorney jointly and severally liable for the full $30,000. **ER 101**, ECF 352 at p. 27.

The five attorneys filed Objections to the sanctions, the Defendants/Appellees opposed the objections. The Attorneys' Objections were denied. Credit Suisse and Cushman then filed claims for attorney fees totaling $106,718.72. The attorneys objected on the basis that under the case law, attorneys cannot be penalized and assessed attorney fees for having opposed sanctions.

District Judge Lodge affirmed the the assessment of attorney fees, made the five attorneys jointly and severally liable, but referred the question of the amount to Judge Quackenbush to whom the case had been re-assigned. Judge Quackenbush stated he would not revisit the issue of the propriety of the imposition of fees, but he, Judge Quackenbush, reduced the fees to $57,738.

Appellants now appeal both the entry of sanctions, the $30,000 fine, and the $57,738 in defendants' attorney fees.[4]

---

[4] A confidential disclosure regarding a private subsequent matter will be filed with

## IV.   SUMMARY OF ARGUMENT

In the interest of not duplicating the verbiage of the argument in the Statement of the Case, Part III and the argument in Part VII, the argument may be summarized as follows as to its key themes:

1) The acts of counsel in attending the meeting with Michael Miller in Denver and placing his verbatim statements directly into affidavit form at that time was not a violation of the Code of Professional Conduct.

2) The acts of counsel in incorporating various of those statements into the Third Amended Complaint filed three weeks later was not a violation of the Code of Professional Conduct.  In fact, Magistrate Judge specifically ruled that he would make no finding that sanctions were appropriate under F.R.C.P. Rule 11.

3) The acts of counsel at oral argument before the Court on January 12, 2012 in reciting and referencing materials contained in the Third Amended Complaint were not a violation of the Code of Professional Conduct.

4) The fact that counsel did not file the signed affidavit of Michael Miller which was executed subsequent to the date of the filing of the Third

---

this brief under seal as a **PRIVILEGED** private disclosure to the Court and Counsel.

Amended Complaint was not "**knowingly…mak[ing] a false statement of fact or law**" under Rule 3.3 because

a. The Magistrate Judge had a Rule 12 Motion to Dismiss and a motion to reinstate a claim under consideration, and he was required to confined his deliberations to the "four corners of the Complaint;"

b. The Magistrate Judge had earlier, in very direct and firm terms, advised counsel that he didn't want anything coming before him outside the four corners of the Complaint while the motions were being considered;

c. The attorney for Michael Miller specifically directed that the signed affidavit not be published, advising that his client would sit for a deposition under oath and be thereby protected from violating the confidentiality requirements of his employment relationship;

d. Plaintiffs' counsel had a duty to comply with Idaho Rule of Professional Conduct 4.4, entitled **Respectful Rights of Third Persons** to not disregard the rights of third persons;

5) There is absolutely no evidence in the record that any of the Plaintiffs' counsel "**knowingly**" did anything wrong.

6) The award of $30,000 jointly and severally against the five attorneys brings the sanction to the level requiring "clear and convincing evidence" of violation of the Code of Professional Conduct.

7) With regard to the charge under I.R.P.C. 8.4 of "multiplying proceedings," the case authorities in the Ninth Circuit clearly provide that attorneys have the right to defend against charges of sanctions, and that their defense thereof does NOT constitute a multiplication of proceedings upon which sanctions or opposing parties' attorney fees may be imposed. The multiplication of proceedings was not the result of any conduct of Plaintiffs' counsel, but rather the inappropriate seeking of sanctions by the Defendants. The $57,738 awarded to the defendants for attorney fees was virtually all improper, especially in light of the fact that the District Court disallowed defendants' request for terminating sanctions.

8) Appellants should be granted the following relief:

   a. The sanctions imposed against Robert C. Huntley and James S. Sabalos be reversed and over-ruled and their posting of $6,000 each with the clerk of the court be refunded; and

   b. The Judgment that they are jointly and severally liable to reimburse defendants/appellees attorney fees of $57,738 be reversed and over-ruled.

c.  Costs be awarded to Appellants.

## V.  STANDARD OF REVIEW

The Appellate Court considers the appeal *de novo*. The standard is that on sanctions motions the Trial Court must have based its ruling on clear and convincing evidence.

Idaho Rule of Professional Conduct 3.3 requires a finding that the attorneys **knowingly** violated the rule.  Rule 3.3 further requires that the alleged act or omission be **material**.

Nothing in the evidence establishes that the attorneys knowingly violated Rule 3.3 and the record is clear and undisputed that the signed affidavit was not material or determinative of the outcome of the motions to dismiss under consideration by the Trial Court.

The same standard applies to all issues on appeal.

## VI.  ARGUMENT

### Argument Section 1.  There was no violation of Rule 3.3 or 8.4

Idaho Rule of Professional Conduct 3.3 provides for sanctions only when an attorney KNOWINGLY makes or fails to correct a false statement.  A further predicate for imposition of sanctions is that the false statement be MATERIAL:

RULE 3.3: CANDOR TOWARD THE TRIBUNAL

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

Cutting through the lengthy recitations by the Honorable Magistrate Judge Ronald Bush, which were adopted without properly focused analysis and justification by the Honorable District Judge Edward Lodge, the case boils down to the following sequence of ten (10) events, not one of which constitutes any misconduct, sanctionable or otherwise.[5]

**Event No. 1:** MAI Appraiser Michael Miller (a former employee of Cushman who was gravely concerned about the legality of the Total Net Value appraisal scheme and, its "potential liability" to CW and CS), was interviewed in Denver on March 19, 2011. His exact words were incorporated into an affidavit as he spoke. Two Plaintiffs' attorneys were present in person and two others were conferenced in via telephone. Miller dictated while attorney Conant typed. In certain paragraphs, Miller even took over the typing. Miller re-read and approved every word before leaving for the airport.

**Event No. 2:** Miller did not sign the affidavit at the end of the meeting in Denver, wishing to first consult counsel about potential liability under the confidentiality provisions of his employment contract with Cushman and view

---

[5] Most of the citations to the Excerpts of the Record will be made when these ten events are repeated in more detail in the Argument section of this brief.

emails from his personal computer (which was in the possession of his former employer, the Defendant Cushman and Wakefield).

**Event No. 3:** Plaintiffs were under an April 21, 2011 deadline to file a Third Amended Complaint to plead facts more specifically. At that point, fifteen months into the case, no discovery had been permitted. Therefore Plaintiffs immediately filed the unsigned affidavit (as an attachment to an affidavit of counsel) with the Court, with service on counsel, in support of a Motion for leave to depose Miller to preserve his testimony, because Miller was unwilling to sign for fear of suit against him by Cushman. Upon advice of his attorney, he was willing to be **deposed under oath** to protect himself from being charged with violation of restrictions in his employment contract.

**Event No. 4:** On April 4, 2011, Magistrate Bush denied Plaintiffs' request to take Miller's deposition ECF 128 **ER 1172-1175**. In denying Plaintiffs' request, Magistrate Bush stated:

> **The Court does have concern, however, that even the most narrowly-defined discovery boundaries, particularly in a case like this, could very well blossom into a morass of tangled factual and legal arguments that raise more questions than answers. .** . Even after U.S. District Judge Edward J. Lodge's March 31, 2011 Order on Report and Recommendation (Docket No. 126), these concerns remain . . . ." **ER 1173** (ECF 128, p. 2) (emphasis added).

**Event No. 5:** Plaintiffs' attorneys incorporated some of Miller's testimony into the Third Amended Complaint. The court-imposed deadline for filing the TAC arose BEFORE Miller later provided a signed, slightly modified, version of the affidavit.[6]

No violation of any statute, Rule, or Standard of Practice has occurred at this point—in fact Magistrate Judge Bush specifically ruled that he was making no finding as to whether sanctions are appropriate under F.R.C.P. 11 regarding the TAC as filed. See Memorandum Decision and Order of Judge Bush, **ER 97**, ECF 352 at paragraph 5 on page 23, which reads:

> "5. The court makes no finding as to whether sanctions are appropriate under F.R.C.P. 11." **ER 97**

Even to this date, neither Judge Bush nor Judge Lodge nor even defense counsel have urged that Rule 11 would come in to play regarding the allegations in the Third Amended Complaint. That is, no suggestion has been made by anyone that the Plaintiffs'/Appellant attorneys violated any rule or statute or Standard of Practice by incorporating the witness Miller's statements in the Third amended Complaint.

Next there followed:

---

[6] Miller's deposition was finally permitted on May 31, 2012, wherein he affirmed the truth of the statements in the unsigned affidavit, testifying the edits to the unsigned affidavit were to protect him from suit by his former employer.

**Event No. 6:** Miller made minor revisions to his unsigned affidavit, and his attorney advised that he did not want that affidavit used or published. Plaintiffs' counsel was directed by Miller's attorney not to use or publish the newly signed affidavit. Miller remained willing to have his deposition taken.

Magistrate Judge Bush later lifted the stay of discovery for limited purposes and allowed Miller's deposition to be taken on May 31, 2012. The signed affidavit was provided to defense counsel by Miller's attorney on April 27th, 34 days prior to the date Miller sat for his deposition. Mr. Miller's attorney had specifically requested that the signed affidavit not be made public.

**Event No. 7:** Oral argument before Judge Bush on pending Motions to Dismiss and Plaintiffs' Motion for Partial Summary Judgment was conducted, wherein two of plaintiff's counsel referenced paragraphs in the **Third Amended Complaint.** Not once did they reference the Miller Affidavit. The transcript of the hearing reads in part as follows: **ER 680** to **844**

### Attorney Huntley Oral Argument:
(all emphasis supplied)

At page 10 lines 14-16: "...with the advent of the new information we have through the whistleblower **and other new allegations in the Third Amended Complaint. ER 689**

At page 10, lines 21-24: "**The Third Amended Complaint clearly presents facts** upon which Cushman should be held to respond to the defendant as a defendant in this case, as a co-conspirator aiding and abetting …" **ER 689**

At page 12, lines 12-13: "There are many more facts in the **Third Amended Complaint**" **ER 691**

At page 12, lines 15-16: "…is alleged in our **Third Amended Complaint at paragraph 76.**" **ER 691**

At page 14, lines 2-3: "—the actual wording there because its **alleged in the Complaint**." **ER 693**

At page 14, lines 5-6" "Attorney Huntley: **And I'll just stick with the allegations in the Complaint."** **ER 693**

At page 14, lines 20-23: "**The Third Amended Complaint adds information provided by the whistleblower, Michael Miller**. And I won't – I mention only a couple of highlights here. At paragraph 78 we – the Plaintiffs state…" **ER 693**

At page 15, line 5: "Paragraph 79(a) alleges …" **ER 694**

At page 15, line 8: "Paragraph 79(b) lists a whole group…" **ER 694**

At page 15, lines 11-12: "The Third Amended Complaint at paragraph 119 alleges…" **ER 694**

At page 15, line 17: "Cushman knew that the value – in paragraph 153…" **ER 694**

At page 15, lines 24-25" "Are further alleged in most of the paragraphs between paragraph 173 and 191." **ER 694**

At page 16, line 3: "…alleged in the Complaint at paragraph 183." **ER 695**

At page 23, lines 4-7: "That and the whistleblower. And also the affidavit of Mike Haney, and the affidavits of Miller (sic, Mason) that there can be considered in connection with this motion." **ER 702**

**Attorney Sabalos Oral Argument:**

At page 70, line 21: "At paragraph 57…" **ER 749**

At page 71, line 12: "At paragraph 57…" **ER 750**

At page 71, line 18: "At paragraph 58…" **ER 750**

At page 72, line 11: "Paragraph 61…" **ER 751**

At page 72, line 18: "Paragraph 62…" **ER 751**

At page 73, line 6: "Now paragraph 63 and 64…" **ER 752**

At page 73, line 23: "At 65 through 69…" **ER 752**

At page 74, line 21: "Paragraph 76." **ER 753**

(Further such references by Attorney Sabalos omitted as redundant. At no point did Mr. Sabalos refer to the unsigned affidavit)

Thus, it is clear that throughout the oral arguments made by Attorney Huntley and Attorney Sabalos, they were referring to, and only to, the Third Amended Complaint. Never once did they mention the unsigned affidavit, contrary to the representations by Magistrate Bush in his Report and Recommendation **ER 352** and Judge Lodge in his Memorandum Decision. **ER 531**

**Event No. 8:** A brief was filed by plaintiffs, "Plaintiffs' Opposition to Credit Suisse Motion to Dismiss," ECF No. 152 **ER 987**, which referenced **only** the Third Amended Complaint. The clear text of that document contradicts and disproves the representations by the Court and Counsel that references were made to the unsigned affidavit.

Note that never in that memorandum did Plaintiffs' counsel ever refer to the Miller unsigned affidavit.

**Event No. 9:** Plaintiffs' filed Memorandum in Opposition to Cushman Motion to Dismiss Third Amended Complaint ECF No. 153, which is the second document about which the trial court and counsel have incorrectly asserted that reference was made to the unsigned affidavit. **ER 957**.

At page 22: **ER 978**

> Cushman makes only two points in its attack on Plaintiffs' conspiracy, or joint liability, allegations: first, that the **Third Amended Complaint's recounting** of an interaction between Cushman employee Mike Miller and Credit Suisse executives does not allege a nefarious agreement between the two entities; and, second, that Plaintiffs' complaint does not allege the who, what, when, where and how of a conspiracy between Cushman and Credit Suisse. **A fair reading of the entirety of Plaintiffs' complaint**, and the specifics of the encounter between Miller and the Credit Suisse executives, makes clear that Plaintiffs unequivocally alleged a concerted effort by Cushman and Credit Suisse: (emphasis supplied)

At page 24: **ER 980**

> The last point is found at page 36 of Plaintiffs' Third Amended Complaint. Plaintiffs specifically pleaded that an inquisitive and suspicious Cushman employee, Michael Miller, who was not involved in preparing the appraisals, was assured by Credit Suisse executives that the appraisals were not being used to "mislead or over-leverage", and that the "appraisals would not have an unusual adverse effect on the build-out" of the MPCs. (TAC Para 73, 74, 75, 76) Plaintiffs then specifically pled that the reassurances by the Credit Suisse executives "were all lies." (TAC Para 73, last sentence, 74, 75, 76) Remarkably, at pages

> 24 and 25 of its motion, Cushman makes reference to that same conversation and suggests that Plaintiffs did not allege that the statements were lies.

Note that all references were to the TAC and no references were made to the unsigned affidavit.

Neither (1) the allegations of the TAC; (2) the oral argument; nor (3) the briefs violated any Statute, Rule of Professional Conduct, or Standard of Practice.

**Event No. 10:** Credit Suisse requested terminating sanctions, for dismissal of the Complaint. **ER 387**, ECF 253-1 which request was denied. Cushman requested sanctions without specifying the relief sought **ER 413**, ECF 246-1.

### General Discussion Relative to Several or All "Events"

Sanctions are to be based upon "clear and convincing evidence." There is and was no basis for the Trial Court to have found even a "preponderance of the evidence," much less anything approaching a clear and convincing thresh-hold.

The Defense counsel will likely be re-asserting that there are material differences between the unsigned and signed affidavits.

There has been no articulation either by the Defense Counsel, the Magistrate Judge, or the District Judge as to what changes made any of the differences substantial, and more importantly, why any differences matter if the trial court was limited to considering the allegations properly pled in the TAC, and if, further, no allegations in the TAC have been stricken based on Rule 11.

The clear reasons for Plaintiffs' counsels' decision to not muddy up the Motion to Dismiss proceedings are as follows:

1) Magistrate Judge Bush had admonished and advised counsel that he did not want counsel, while motions to dismiss were pending, to provide matters outside the four corners of the Complaint. (Admonition quoted below)

2) The affiant did not "**change his or her mind.**" The reason given for the edits was the fact that Miller was uncomfortable with some of the materials as first stated without first having access to his PC which had been kept in the custody of Cushman, and he was concerned that if he misstated something he could be liable to suit from his former employer, Cushman. Plaintiffs' counsel were totally and appropriately forthcoming by taking the step of requesting that the Court allow limited discovery to receive the contents of Miller's PC and then have his deposition taken to preserve his testimony. (There had been no discovery allowed during the first fifteen months which included this time period.) Defendants objected to the deposition of Miller and any opening of the evidence and Magistrate Judge Bush sustained their objections. A single seven hour deposition would have prevented this entire controversy.

When Judge Bush rejected Counsels' request that Miller be permitted to give his deposition under oath, Judge Bush very forcefully admonished counsel in the following words: **ER 1173**

> Regarding the two subpoenas, on May 11, 2010, this Court granted Defendants' Motion to Stay. *See* 5/11/10 Order, pp. 7-8 (Docket No. 73) ("Finding legal support and common sense favoring a general discovery stay at this time, Defendants' Motion to Stay is granted, pending further order of the Court."). The Court imposed the stay to allow the then-pending Motions to Dismiss to be resolved without the parties' respective discovery requests spiraling out of control before the action formally progresses beyond the pleadings stage. *See, e.g.*, *id.* at p. 6 ("The Court does have concern, however, that even the most narrowly-defined discovery boundaries, particularly in a case like this, could very well blossom into a morass of tangled factual and legal arguments that raise more questions than answers – all before Defendants even submit a formal Answer to Plaintiffs' Second Amended Complaint."). (ECF 128 filed 04/04/11)

The eight Plaintiffs' counsel made a proper judgment call they not violate the above admonition of the Court, when they well knew that they had the absolute right to base the Third Amended Complaint on the statements Miller made in this Denver interview.

Had Plaintiffs' counsel filed the signed affidavit, they would have violated the instructions of Miller's attorney that the affidavit NOT be published. Miller's attorney reasonably volunteered his client would sit for a deposition under subpoena, to which offer Defendants objected. It was remarkable that Judge Bush acquiesced and sustained Defendant's objection, rather than allow Plaintiffs to preserve the testimony of a very key witness.

Page 21

Further, Idaho Rule of Professional Conduct 4.4, entitled **Respect For Rights of Third Persons,** admonishes counsel to not disregard the rights of third persons so long as the client's interest is not adversely affected. Mr. Miller was a key "whistleblower type" witness whose cooperation needed to be preserved for testimony at trial. He came forward at a time when Plaintiffs had been permitted no discovery, we had no guarantee that his knowledge of the bad acts of the Defendants would be discovered through other witnesses in the future, and therefore it was certainly an instance of recklessness by the Magistrate Judge when he denied Plaintiffs' request to preserve that testimony.

Both the Magistrate Judge and the District Judge relied on the allegations of the Third Amended Complaint, in making their rulings on the motions to dismiss. Magistrate Judge Bush in his subsequent rulings never stated that his Report and Recommendation to the District Court would have changed had he seen the signed affidavit.

District Judge Lodge very clearly articulated that he had read both affidavits, had read the subsequent deposition of Michael Miller and then stated at several points in his decision that his rulings on the motions to dismiss would not have changed had he seen the signed affidavit.

Judge Lodge at **ER 292**, ECF 297 at p. 7, stated:

> Further, the Court finds Mr. Miller's statements and/or the difference between his signed Affidavit and unsigned

Declaration **do not change** the Court's conclusions as to this claim at this stage [dismiss the TAC] of the proceedings. (Bracketed material and emphasis supplied)

At ECF 297 page 8 Judge Lodge stated:

The portions of the TAC supporting this conclusion do not rely upon the Miller Declaration and the signed Affidavit of Mr. Miller **does not change** the Court's ruling on these claims. (Dkt. 210 at 19-20.) Moreover, the materials provided concerning the discrepancies between Miller Affidavit and Declaration do not change this Court's opinion concerning its ruling on the Negligence Claim. The fact remains that upon the standard applicable for a Motion to Dismiss, the TAC has stated allegations sufficient to defeat the Motion. (Dkt. 210 at 18-20.) The same is true as to those claims for Fraud and Negligent Misrepresentation which survived the Motion to Dismiss as to certain Plaintiffs. (Dkt. 210 at 20-22.) (emphasis supplied)

At page 12 Judge Lodge stated:

In reviewing its prior Order the Court finds its ruling as to Credit Suisse's Motion to Dismiss remains the same even in light of the parties' arguments raised on reconsideration. Credit Suisse contends the Negligence Claim relies upon the unsigned Miller Declaration but is unsupported by the newly revealed signed Miller Affidavit as well as Mr. Miller's Deposition Testimony. (Dkt. 253 at 13.) [4] **The paragraphs of the TAC cited in the Report and this Court's Order as giving rise to the source of a duty sufficient to withstand the Motion to Dismiss are not nullified because of the discrepancies between the Miller Affidavit and Declaration or the testimony of Mr. Miller at his deposition.** (Dkt. 210 at 19-20.) Credit Suisse's Motion seeks to argue over the evidence they believe Plaintiffs will offer to support the allegations made in the TAC. (emphasis supplied)

fn4 Credit Suisse and Plaintiffs both present arguments concerning the impact of Mr. Miller's deposition which was conducted after the briefing on Cushman &

> Wakefield's Motion for Reconsideration was completed. The Court has reviewed Mr. Miller's deposition transcript. As with Cushman & Wakefield's Motion above, the Court has also reviewed its prior Order concerning Credit Suisse's Motion to Dismiss in light of the parties' arguments, the Miller Affidavit and Declaration, and the record herein. **For the same reasons stated herein, the Court concludes its ruling in the prior Order was correct even considering the arguments raised in the instant Motion by Credit Suisse**. (Dkt. 210.) (emphasis supplied)

The foregoing clearly establishes that the differences between the unsigned and the signed affidavits were not **material**. I.R.C.P. Rule 3.3(a)(1) requires that sanctions apply only if there is the making of or failure to correct a **material** fact, that subsection reading:

> a. "A lawyer shall not knowingly:
>> (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of **material** fact or law previously made to the tribunal by the lawyer.

The failure to meet that requirement alone is an adequate and proper basis for reversal of the order for sanctions.

Nowhere in the record is it established that the Court or parties spent time responding to false information presented by Appellants, that, of course, because there was no false information. There never was any allegation at any stage in this proceeding that Appellants presented any "false information" which had to be considered by the District Court. This case is about the failure to give notice about

the existence of an affidavit, which was neither germane to, nor appropriate to, the Motions to Dismiss, which motions were confined to the four corners of the Third Amended Complaint.

There is absolutely no testimony or other evidence that the eight Plaintiffs' attorneys knowingly violated any standards of practice or knowingly or intentionally violated I.R.P.C. Rule 3.3. The attorneys affirmatively knew that having heard the testimony of Mr. Miller they had a right to put his information into the TAC. The attorneys affirmatively knew that they had a right to rely on paragraphs in the TAC in making arguments and responding to motions.

The hindsight, unsupported by any testimony of violations of standards of practice, that they should have known to present materials outside the TAC to the Court while motions to dismiss were pending, does not arise to the level of sanctionable misconduct by clear and convincing evidence.

Miller never pulled back or disavowed any statement in his unsigned affidavit. Suppose, *arguendo,* Miller's signed affidavit were to have flatly pulled back and disavowed his Denver statements made in the presence of four attorneys—what would Judge Bush have done next? It would then have been a jury question as to which document was speaking the truth. The fact of the existence of the second affidavit would NOT allow the court to go outside the four corners of the complaint in making its rulings.

The Magistrate's admonition, itself, made clear that the subject matter of Miller was not to be raised until the rulings on the 12(b) motions were heard and ruled upon, because the Court was, in any event, confined to the four corners of the Amended Complaint.

Judge Bush, in his Memorandum Decision and Order, did not find any knowing or intentional misconduct. The best he could come up with was that Plaintiffs' counsel were "reckless at a minimum." See Memorandum Decision and Order **ER 97**, ECF 352 at page 23, paragraph 4 which reads:

> "Such conduct is reckless at a minimum."

That certainly does not rise to the level of **knowingly** making a false statement, a clearly stated predicate in Rule 3.3 to any imposition of sanctions.

The record in this case does not establish that any of Plaintiffs' then eight counsel knew this series of events would be a violation of I.R.P.C. Rule 3.3.

This Court should direct that the imposition of sanctions be overruled and reversed.

> **Argument Section 2: The trial court's award of $57,738 in attorney fees against appellant attorneys is in clear violation of Ninth Circuit rulings that fees NOT be imposed against attorneys for defending against sanctions.**
>
> > **A. Attorney's Fees Incurred In Preparing A Motion For Sanctions Under §1927 Or The Court's Inherent Powers Is Contrary To Law.**

Magistrate Bush's rationale for awarding attorney's fees to defendants' counsel that were allegedly incurred in preparing and defending their Motions was that his Sanctions Order authorized an award of those fees. However, the Ninth Circuit explicitly disallows an award of attorney's fees for hours spent in preparing and defending a Motion for Sanctions under § 1927 or the Court's "inherent powers." *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 466 (9th Cir. 2010).

The specific issue in that case addressed by the Ninth Circuit was whether "the bankruptcy court improperly included the costs of litigating the motions for sanctions in the costs and fees the court ordered them to pay under its inherent power to impose sanctions." *Id.* at 466. The Ninth Circuit held that such fees were not recoverable, relying on the rationale in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406-07, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). The Supreme Court reasoned that Rule 11 sanctions were limited to "those expenses directly caused" by the improper filing, which did not include costs of appeal. *Id.* The Ninth Circuit "extended that principle in *Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir. 1992)" [rejecting award of attorney's fees for a motion for sanctions pursuant to § 1927 and Rule 11] and *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d at 466:

> In *Lockary*, the district court imposed sanctions against the plaintiffs' law firm under its inherent power rather than Rule 11. *Id.* at 1170. The sanctions included not only the costs incurred by the defendants to oppose the plaintiffs' improper filings, but also "the defendants' cost of preparing and supporting their

motion for sanctions." *Id.* at 1177. The law firm appealed and, relying on *Cooter & Gell*, we reversed:

> *Cooter & Gell* suggests that the trial court should limit sanctions to the opposing party's more "direct" costs, that is, the costs of opposing the offending pleading or motion. We thus find that the district court erred in including the defendants' attorneys' fees for preparing their motion for sanctions in the sanctions it imposed. *Id.* at 1178.

Thus, unequivocal Ninth Circuit precedent directly on point precludes the magistrate's award of attorney's fees for preparing and defending the motions for attorney's fees as a matter of law.

To avoid this clear rule, the magistrate cited a **footnote** in a special master's report attached to another Ninth Circuit case as an appendix, wherein the master stated:

> Whether such fees and costs are recoverable as part of the sanctions imposed is an open question in the Ninth Circuit and the other circuits appear to be divided," but that he thought that the Third Circuit's rule permitting an award of fees for filing a motion for sanctions was the "better view." Attorney's Fees Order, p. 9, citing *In re Girardi*, 611 F.3d 1027, 1067 (9th Cir. 2010) at Appendix, n. 53.

That may have been an "open question" as of October 7, 2009, when the special master's report was prepared, but on June 9, 2010, *eight months later*, the Ninth Circuit definitively answered that "open question" in *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456 (9th Cir. 2010). Moreover, even ignoring that the

Page 28

Special Master's Report was prepared before the Ninth Circuit had ruled on the issue, a footnote in a special master's report attached to a decision as an appendix is not even "dicta." Furthermore, whether or not to award fees for filing the motions for sanctions under Fed. R. App. P. 38 in *Girardi* was not even addressed by the Ninth Circuit and even the master noted that it was "likely academic" given the recommended "cap" on the amount of attorney's fees against each of the attorneys. The Magistrate's reliance on that footnote in a master's report is at best disingenuous.

In addition to that inapposite citation to *Girardi*, the magistrate cited four unpublished district court slip opinions for the proposition that attorney's fees can be awarded for preparation of a motion for sanctions. Not surprisingly, those unpublished District Court slip opinions do not purport to overrule Ninth Circuit precedent and do not even refer to *In re S. Cal. Sunbelt Developers, Inc*. Rather, those cases either award fees for a sanctions motion pursuant to Rule 37 or 26, both of which rules contemplate such an award, or when read, are based on conduct falling under Rule 37 or 26, even though the Court makes a blanket reference to other sanctioning authority. Such slip opinions do not even arguably support the magistrate's disregard of *Ninth Circuit* precedent directly on point.

In *Montoya v. Orange Cnty.*, 2013 WL 6705992, *15 (C.D. Cal. 2013), the district court awarded fees incurred in a motion for sanctions for spoliation of

evidence. Although the district court did not cite any sanctioning authority, it indicated that under Ninth Circuit precedent, "fault" or "negligence" would suffice, unlike the "bad faith" standard required under either § 1927 or a court's "inherent powers." Therefore, it is clear that the case was not under either § 1927 or the court's "inherent powers." *In re SPECS*, 2012 WL 5372583, *2 (N.D. Cal. 2012) only awarded discovery sanctions pursuant to Fed. R. Civ. P. 37(a) and (b). *Garcia v. Bana*, 2012 WL 2119157, *9 (N.D. Cal. 2012) also awarded sanctions pursuant to Rule 37 and 26 for discovery violations. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 5372477, *7 (N.D. Cal. 2012) referred to Rule 37, § 1927 and "inherent powers," but did not identify under which authority sanctions were being awarded. However, the facts of that case show that discovery misconduct was the alleged sanctionable conduct. Finally, *Parker v. Upsher-Smith Labs., Inc.*, 2009 WL 418596, *9 (D. Nev. 2009), decided before *In re S. Cal. Sunbelt Developers, Inc.*, involved a discovery dispute over a court's order permitting ex parte interviews of physicians that was thwarted by counsel. Although the district court referred to inherent powers, § 1927 and Local Rule IA 4-1, sanctions in that case were under Rule 37(b). Thus, Magistrate Bush's award of attorney's fees solely for filing and defending the motions for sanctions is contrary to law.

### B. The Magistrate's Award of Attorney's Fees For Replies, Opposing Reconsideration And Appealing To The District Court Are Also Separately Contrary To Law.

The award of attorney's fees incurred in preparing Replies, opposing a Motion for Reconsideration, opposing Mr. Stillman's [co-counsel in separate appeal] Motion to be Relieved from the Sanctions Order, and the appeal of the Sanctions Order to the District Court are separately not compensable. The Ninth Circuit has clearly rejected the award of fees incurred because of post-order litigation. As the Ninth Circuit stated in connection with a sanctions award, "the expenses incurred in defending the award on appeal are directly caused by the district court's sanction and the appeal of that sanction, not by the plaintiff's initial filing in district court." *Lockary v. Kayfetz*, 974 F.2d 1166, 1178 (9th Cir. 1992), superseded by statute on other grounds as stated in *Margolis v. Ryan*, 140 F.3d 850, 854-55 (9th Cir. 1998). The Supreme Court was explicit: "the party who sought sanctions under Rule 11 was not entitled to reimbursement for the costs of defending an award of sanctions on appeal." *Cooter & Gell*, 110 S.Ct. at 2461. The Court rejected the argument that such costs were incurred "because of" the sanctioned party's filing of the offending pleading. The court refused to adopt the position of the party seeking sanctions that "[it] would have incurred none of [its] appellate expenses had petitioner's lawsuit not been filed." *Id.* The court found that "this line of reasoning would lead to the conclusion that expenses incurred

Page 31

'because of' a baseless filing extend indefinitely." *Id.* Thus, none of the attorney's fees incurred subsequent to filing the motions for sanctions are properly awardable for that reason.

### C. The Magistrate's Statement That The Motions For Sanctions Were The "Excess Costs" Awardable Pursuant to § 1927 Is Separately Contrary To Law.

Magistrate Bush attempted to evade the Ninth Circuit's clear rule against awarding attorney's fees incurred in filing motions for sanctions by trying to shoe-horn the motions for sanctions into § 1927 as alleged "excess costs" incurred as a result of Plaintiffs' counsel's alleged violation of Rule of Prof. Conduct 3.3(a). Attorney's Fees Order, p. 8. However, motions for sanctions are present in every § 1927 case and are *not* considered to be "excess costs" caused by allegedly sanctionable conduct. The contention that "a motion for sanctions would not have been filed but for a party's conduct" and is therefore an "excess cost" is precisely the rationale rejected by the Supreme Court in *Cooter & Gell* and in *In re S. Cal. Sunbelt Developers, Inc.,* when both courts rejected an award of attorney's fees for preparing and defending motions for sanctions. Thus, there is no basis for concluding that the attorney's fees incurred in preparation of the motions for sanctions and defending the Sanctions Order falls within § 1927.

A motion for sanctions is therefore limited to compensating the moving party for some harm "directly caused" by the sanctionable conduct separate and

apart from the motion for sanctions itself. *Lockary*, 974 F.2d at 1177-1178; *Haynes v. City & County of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012) ("A district court may not sanction an attorney for more than the excess costs, expenses and fees incurred by the opposing party").

In this case, there was no harm directly caused by the failure to file the signed Miller Declaration, given that it was irrelevant to any motion pending, discovery was stayed, and was provided to Defendants immediately after the stay of discovery was lifted and thirty days prior to Miller's deposition. Significantly, the magistrate states:

> The failure to file the signed affidavit necessarily meant that the nature of the briefing and the argument, and the court's consideration of the evidence and decision upon the same, was different than it would have been with the addition of such evidence to the record.

The magistrate tellingly does not explain how he would have considered a third party declaration in connection with a Rule 12(b)(6) motion, nor does he reconcile that statement with Judge Lodge's subsequent ruling that although reviewing the materials outside the complaint was improper in ruling on a Rule 12(b)(6) motion, even considering the signed and unsigned declarations *and* Miller's deposition transcript, Judge Lodge would not have changed his decision. The "Miller Declaration issue" therefore could not have caused any compensable harm to Defendants.

### Section 3:  Idaho Rule of Professional Conduct 8.4(d) was not violated

Rule 8.4(d) comes into play when a lawyer "engage[s] in conduct that is prejudicial to the administration of justice."   Appellees wrongfully assert their entitlement to $57,738 in attorney fees because the sanctions delayed the proceedings.  There is absolutely no evidence that the proceedings were in any way delayed by the sanctions.  All case management deadlines were being met and no progress in meeting those deadlines was delayed by the sanctions matter.  The main effect of the sanctions proceedings was to force Plaintiffs'/Appellants' attorneys to spend their efforts in opposing the sanctions at the same time as they were required to spend their limited resources in completing discovery, which discovery was completed on time.

### Section 4: Neither the Magistrate Judge nor the District Judge Provided Appellant Counsel with the Notice or Process Required Before Imposition of Sanctions.

This brief contains only 7,871 words. These Appellants, in the interest of conservation of this Court's time and resources, hereby adopt by reference the briefing on this issue in the companion/consolidated case of attorneys Flynn, Stillman and Conant in Ninth Circuit Case No.  16-35663.

## VII. STATEMENT OF RELATED CASES

There are no related cases other than the *Gibson et al. vs. Credit Suisse et al. and Cushman & Wakefield* "Merits" case, which is before this Court on two separate appeals:

1)   Ninth Circuit Case No. 16-35694 brought by sixty-three plaintiffs represented by Robert C. Huntley (Appellant herein) and The Fuller Law Firm of San Diego; and

2)   Ninth Circuit Case No. 16-35705 brought by five plaintiffs represented by James C. Sabalos (Appellant herein).

## VIII: CONCLUSION AND RELIEF SOUGHT

Appellees respectfully request:

1)   The sanctions imposed against Robert C. Huntley and James C. Sabalos be reversed and over-ruled and their posting of $6,000 each with the clerk of the court be refunded; and

2)   The Judgment that they are jointly and severally liable to reimburse defendants/appellees attorney fees of $57,738 be reversed and over-ruled.

3)   That costs be awarded to Appellants.

Respectfully submitted this 29th day of March 2017,

*/s/Robert C. Huntley*
Robert C. Huntley

*/s/ James C. Sabalos*
James C. Sabalos

# CERTIFICATE OF COMPLIANCE

## Form 6. Certificate of Compliance With Type-Volume Limit

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

    1. This document complies with [the type-volume limit of Fed. R. App. P. [*insert Rule citation; e.g., 32(a)(7)(B)*]] [the word limit of Fed. R. App. P. [*insert Rule citation; e.g., 5(c)(1)*]] because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) [and [*insert applicable Rule citation, if any*]]:

x this document contains 7,871 words (including Statement of Related Cases), **or**
☐ this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

    2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

        ☐ this document has been prepared in a proportionally spaced typeface using [*state name and version of word-processing program*] in [*state font size and name of type style*], **or**
        ☐ this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

*/s/ Robert C. Huntley*
Attorney for Appellants
Dated: March 29, 2017

## **CERTIFICATE FOR BRIEF IN PAPER FORMAT**

9th Circuit Case Number: 16-35693

    I, <u>Robert C. Huntley</u>, certify that this brief is identical to the version submitted electronically on March 29, 2017.

Dated this: _____

_____

Robert C. Huntley

| 9th Circuit Case Number(s) | 16-35693 (consolidate with 16-35663) |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*******************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | Mar 29, 2017 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Robert C. Huntley |

*******************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) | /s/ Robert C. Huntley |